UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                            Case Number 21-20240
v.                                                    Honorable David M. Lawson

EUGENE DAVIDSON, III,

        Defendant.
_____/

## OPINION AND ORDER DENYING MOTION TO SUPPRESS EVIDENCE

Defendant Eugene Davidson challenges a search warrant issued by a state court magistrate to search one side of a duplex in Detroit, Michigan. Davidson says that the supporting affidavit do not establish probable cause to search the side of the duplex where he lived, even though it may have been sufficient to authorize the search of the other side. The Court heard arguments on the motion on June 21, 2023. Although the investigating officers confused the addresses of the units, and most of the affidavit discussed the "wrong" side of the duplex, there was sufficient reliable information in the affidavit to establish probable cause to search the defendant's unit. The motion to suppress the evidence recovered in that search, therefore, will be denied.

I.

Davidson is charged with possessing cocaine with intent to distribute, possessing a gun in furtherance of a drug trafficking crime, and being a felon in possession of a firearm based on evidence discovered during the execution of a search warrant at a residence in Detroit, where Davidson lived. This motion concerns the description of that premises in the warrant affidavit. Briefly, the facts stated by the affiant are as follows.

On December 11, 2020, Officer Jeremy Robson of the Detroit Police Department received an anonymous tip stating that a person known by the street name "Tanto" was storing illegal drugs

and selling drugs from two residences in Detroit, at 6551 Bewick and 5894 Hurlbut. On December 14, 2020, Robson went to the premises at 5894 Hurlbut and conducted surveillance. He saw a white Dodge Durango SUV with a license plate registered to defendant Eugene Davidson, III. On the same date, Robson asked another officer, Sergeant Jeffrey Banks, to surveil the 6551 Bewick address. Banks did so and observed six individuals enter and leave the residence in a series of "short stays," which the affiant said in his experience are typical of illegal drug transactions. During the series of short stay visits, Banks also observed a black male in his 50s arrive at the Bewick premises in a white Durango, enter the same door as the other visitors, and leave a short time later. Robson asked three other officers to follow the white Durango. They did so and saw it stop at a muffler shop, where the front seat passenger got out with a bag in his hand, got into another vehicle, then after about 15 minutes got out of the second vehicle empty handed, returned to the Durango, and drove to the 5894 Hurlbut residence.

On December 29, 2020, Robson again surveilled the Hurlbut residence and saw the same white Durango parked outside the home. While watching, Robson saw a black male arrive in a burgundy SUV and approach the home. The person knocked and entered the left entry door, but after several seconds he reemerged and knocked at the right entry, which then was opened by a black male in his "20s" dressed in all black. The departing person was seen to have a plastic bag in his hand, and the two men then went toward a white Chevy Impala that was parked at the home. Both vehicles drove away "together."

On December 31, 2020, police executed a separate warrant at 6551 Bewick and seized quantities of cocaine and currency, along with firearms.

On December 31, 2020, Robson was informed by another anonymous informant that a person named Eugene, street name "Tanto," lived at 5894 Hurlbut and supplied cocaine for sale at

the 6551 Bewick house, using an older model white Dodge Durango to make the deliveries. The informant told Robson that "Eugene lives at and stores his cocaine at 5894 Hurlbut Street, and uses the right door (when facing the residence) for entry, however Eugene knows the individuals who use the left door (when facing the residence)." Warrant Aff. ¶ 9, ECF No. 64-1, PageID.494. Robson noted that the registration for the white Durango that was listed in Davidson's name had 5894 Hurlbut as the registration address.

Robeson presented all of the above to a magistrate and asked for authorization to "access and search both flats." Warrant Aff., ECF No. 64-1, PageID.494. The warrant and affidavit included a photograph of the premises. The state court magistrate issued a warrant that authorized the search of "5894 Hurlbut," but only the part accessed through "the right front door," describing the premises to be searched as follows:

> The entire curtilage of 5894 Hurlbut and premises of the right front door (when facing), which is described as a 2 story, two family dwelling, with tan siding and green trim. This location [sic] on the east side of the street between Shoemaker and the East Edsel Ford Service Drive. This address is located in the City of Detroit, County of Wayne, and the State of Michigan.

Search Warrant, ECF No. 64-1, PageID.490.

The government asserts that when the search warrant was executed, officers entered and searched only the premises accessed through the right front door of the structure, and that no entry or search of the unit at the left front door occurred. They seized drugs and guns during the search of the right side unit. The two front pillar posts adjacent to the front step leading to both entrance doors plainly bear two separate addresses: 5894 on the left, and 5892 on the right as one is facing the duplex. Perhaps as a comment on the quality of the detective work or the officers' powers of observations, the government says that it learned only after the search was executed that the 5894 street number corresponded to the left side entry unit, and that the right side door was for the unit designated at 5892.

- 3 -

The defendant argues that the warrant affidavit repeatedly referred to the premises to be searched as 5894 Hurlbut and set forth no information to establish probable cause to search 5892 Hurlbut, which was the unit entered during the warrant execution. The defendant contends that, because there was no basis for probable cause to search 5892 Hurlbut, the warrant was invalid, and all fruits of the search must be suppressed.

II.

"The Fourth Amendment protects '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" *Liberty Coins, LLC v. Goodman*, 880 F.3d 274, 280 (6th Cir. 2018) (quoting U.S. Const. amend. IV). It is generally understood that a search is "unreasonable" "if it is not conducted pursuant to a warrant issued upon probable cause." *Ibid.* (citing *Camara v. Municipal Court of City & County of San Francisco*, 387 U.S. 523, 528-29 (1967)). "Probable cause exists if 'the facts and circumstances are such that a reasonably prudent person would be warranted in believing that an offense had been committed and that evidence thereof would be found on the premises to be searched.'" *Peffer v. Stephens*, 880 F.3d 256, 263 (6th Cir. 2018) (quoting *Greene v. Reeves*, 80 F.3d 1101, 1106 (6th Cir. 1996)).

Search warrants also must "describe the place to be searched with 'particularity.'" *United States v. Wagoner*, 836 F. App'x 374, 378 (6th Cir. 2020) (quoting U.S. Const. amend. IV). "The reason for this requirement is clear; the 'evil that the framers of the Constitution were trying to eradicate . . . was the so-called general warrant that allowed officers to search at random.'" *Ibid.* (quoting *United States v. Durk*, 149 F.3d 464, 466 (6th Cir. 1998)). Courts have expressed a clear preference for search warrants to "be as accurate and specific as possible." *Ibid.* But they do "not require perfection." *Ibid.* Instead, the particularity requirement is satisfied when "the description is sufficient to enable the executing officer to locate and identify the premises with reasonable

effort," and when there is no "reasonable probability that another premises might be mistakenly searched." *Ibid.* (quoting *Durk*, 149 F.3d at 465; *United States v. Gahagan*, 865 F.2d 1490, 1496 (6th Cir. 1989)) (cleaned up). "Under this standard '[e]ven though a warrant containing the wrong address can sometimes risk a mistaken search, such an error does not invalidate a search warrant if the warrant includes other specific descriptors that remove the probability that the wrong location could be searched.'" *Ibid.* (quoting *United States v. Abdalla*, 972 F.3d 838, 846 (6th Cir. 2020)). "[I]f the warrant contains errors but the description would nonetheless direct the officers to the correct location or there are additional circumstances that reduce the probability that the wrong location will be searched, then the warrant is not necessarily invalid." *Ibid.*

The government's initial response to the defendant's motion suggests that it believed that the statements in the warrant affidavit amounted to a mere misnomer. But that is not how the Court reads the motion, and the defendant's position was made clear at oral argument. From the facts recited in the affidavit, it is plain that Robson knew that the structure on Hurlbut Street was a duplex, and he wanted to search both sides. He identified — incorrectly — the structure by a single address: 5894. And there is evidence developed in the affidavit that ties that address to the defendant, such as the observations of his use of the Durango and the registration of that vehicle in his name at 5894 Hurlbut. The question for this motion is whether there is sufficient probable cause presented in the affidavit to support the magistrate's authorization to enter the side actually searched, that is, "[t]he entire curtilage of 5894 Hurlbut and the premises of the right front door (when facing)."

The affidavit recited sufficient facts to search at least one of the residences of the duplex. In similar circumstances, observations of multiple "short stay" visits to a premises, and observations of the defendant coming and going and making deliveries or pickups, have been

found to constitute sufficient probable cause to search a home for evidence of illegal drug transactions. *E.g.*, *United States v. Joye*, 454 F. Supp. 3d 675, 685 (E.D. Mich. 2020). Moreover, evidence of illegal drug trade involving the two locations was confirmed when the 6551 Bewick home was searched (under a warrant that is not challenged here), and cocaine, currency, and guns were seized. The defendant's connection to the 5894 structure was confirmed by the affiant's observations of his registered vehicle being parked there, as well as motor vehicle registration data listing the Hurlbut premises as the registration address. Those circumstances taken together with observations of the defendant's vehicle travelling back and forth between the locations, while persons riding in them engaged in deliveries and handoffs along the way, are sufficient to corroborate the anonymous tips by which the affiant was informed directly that the defendant was storing drugs at his Hurlbut residence and conveying them to the Bewick premises for sale.

But what about the right side of the duplex, which no one identified by its address? Paragraph 9 of the affidavit recites facts that tied the drug activity — the cocaine storage by "Eugene," who drove the white Durango, and who supplied the Bewick Street address with the product — to the right door entrance. That information, however, came from an "anonymous individual," whose reliability was not established by any statements about him or her in the affidavit itself. Seizing on that point, the defendant here insists that information from the confidential informant stating that the defendant resided in the unit accessed through the right entry door was "not corroborated" by any other facts disclosed through the affiant's investigation. The Court disagrees. That information was corroborated by other facts disclosed in the affidavit.

"Where . . . information in the affidavit comes from a confidential source, a court must consider the veracity, reliability, and the basis of knowledge for that information as part of the totality of the circumstances analysis." *United States v. Coffee*, 434 F.3d 887, 893 (6th Cir. 2006)

(*United States v. Frazier*, 423 F.3d 526, 532 (6th Cir. 2005)). "'While independent corroboration of a confidential informant's story is not a sine qua non to a finding of probable cause, . . . in the absence of any indicia of the informant's reliability, courts insist that the affidavit contain substantial independent police corroboration.'" *Ibid.* (quoting *Frazier*, 423 F.3d at 532.). "'As long as the issuing judge can conclude independently that the informant is reliable, an affidavit based on the informant's tip will support a finding of probable cause.'" *Ibid.* (quoting *United States v. McCraven*, 401 F.3d 693, 697 (6th Cir. 2005)).

Davidson's argument overlooks the facts stated in the affidavit that, on December 14, 2020, Officer Robson went to the premises at 5894 Hurlbut and conducted surveillance. While there, he saw a white Durango SUV with a license plate registered to defendant Eugene Davidson, III. On December 29, 2020, Robson again surveilled the Hurlbut residence and saw the same white Durango parked outside the home. Robson also noted that the registration for the white Durango that was listed in Davidson's name had 5894 Hurlbut as the registration address. Those circumstances certainly suffice to corroborate the statement that the defendant was residing at the 5894 residence.

During the December 29, 2020 surveillance, Robson also observed a black male who opened the door of the *right* entrance, allowed a visitor to enter the unit, then exited with the visitor a short time later, got into a car that was parked outside, and left. Warrant Aff. ¶7, ECF No. 64-1, PageID.494. The visitor was carrying a plastic bag when he walked to his burgundy SUV. *Ibid.* That observation does not describe Davidson; the person who answered the right front door was in his 20s. But it does suggest that the visitor went to the premises to pick up a delivery and left with a plastic bag of something, and that the transaction occurred at the *right* door of the duplex.

The affidavit also states that officers surveilled the 6551 Bewick premises and observed both (1) a series of short stay visits typical of narcotics transactions, and (2) a black male in his 50s who arrived in the same white Durango registered to the defendant, entered the Bewick address, and then left a short time later. Police followed the Durango and observed it making a stop for an apparent handoff transaction at a muffler shop before returning to the Hurlbut premises. The defendant also overlooks the fact that the Bewick premises subsequently was raided under a separate, unchallenged warrant, which resulted in the seizure of guns and drugs. Those facts are sufficient at least to suggest that (1) illegal drug trafficking was taking place within the Bewick premises (2) one or more persons were observed using the same vehicle, which was registered to the defendant, to visit both the Bewick and Hurlbut residences, and at a handoff rendezvous in between, and (3) the vehicle was registered to the defendant at the Hurlbut premises, albeit at that 5894 address. The observations are sketchy as to identifying details of the several "black males" observed at the premises and driving or riding in the Durango. But the warrant in question is not a warrant for arrest of a person; it is a warrant to search premises. The facts discussed above plausibly establish a basis to believe that drugs were being trafficked by one or more persons between the Bewick and Hurlbut residences and that the activity on Hurlbut focused on the dwelling's right side entry door, which is consistent with the anonymous tips that directly informed the affiant of the same, and which also named the defendant as the trafficker involved. That tip was consistent with and corroborated by other observations set forth in the warrant affidavit, which established a nexus between the defendant and the premises actually searched, between those premises and the white Durango registered to him, and between the vehicle and the two addresses involved in the report of illegal drug sales.

III.

The description of the property in the affidavit and warrant was sufficiently precise to eliminate the likelihood of a search of the wrong premises, and the affidavit recited sufficient facts to establish probable cause to search the premises actually searched.

Accordingly, it is **ORDERED** that the defendant's motion to suppress evidence (ECF No. 58) is **DENIED**.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Dated:   July 5, 2023