UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                       Plaintiff,                         Case Number 21-20240

v.                                                 Honorable David M. Lawson

EUGENE DAVIDSON, III,

                       Defendant.

_____/

## <u>ORDER DENYING MOTION FOR RECONSIDERATION</u>

On July 5, 2023, the Court issued an opinion and order denying the defendant's motion to suppress evidence seized during the execution of a search warrant at his residence. On July 19, 2023, the defendant filed a motion for reconsideration of that ruling in which he argues that several factual errors in the Court's recitation of facts disclosed by the warrant affidavit combine to undercut the Court's probable cause finding. The Court has considered the motion and finds that any misapprehensions of the record facts do not vitiate the conclusion that the warrant affidavit recited sufficient facts to establish a nexus between the premises that was searched and suspected illegal drug trading activity. The motion therefore will be denied.

"Motions for reconsideration of non-final orders . . . may be brought only upon the following grounds: (A) The court made a mistake, correcting the mistake changes the outcome of the prior decision, and the mistake was based on the record and law before the court at the time of its prior decision; (B) An intervening change in controlling law warrants a different outcome; or (C) New facts warrant a different outcome and the new facts could not have been discovered with reasonable diligence before the prior decision." E.D. Mich. LR 7.1(h)(2). The defendant contends that the Court erred by relying on an incorrect construction of facts stated in the warrant affidavit that was presented as part of the motion record.

The question presented by the defendant's motion to suppress evidence was whether the search warrant affidavit established probable cause to search the defendant's side of a duplex (the right side when facing the unit) when the affidavit consistently listed the address for the adjacent side of the unit. The affidavit said as much. In paragraph nine, the affiant averred that an anonymous source told him that "Eugene, who goes by the street name 'Tanto,'" stored drugs at "5894 Hurlbut Street, and uses the right front door (when facing the residence) for entry." ECF No. 64-1, PageID.494. Because that source was anonymous, the Court reviewed the affidavit to see if there was sufficient corroboration to support the tip.

The standard for determining probable cause is well settled and widely understood. "Probable cause exists if 'the facts and circumstances are such that a reasonably prudent person would be warranted in believing that an offense had been committed and that evidence thereof would be found on the premises to be searched.'" *Peffer v. Stephens*, 880 F.3d 256, 263 (6th Cir. 2018) (quoting *Greene v. Reeves*, 80 F.3d 1101, 1106 (6th Cir. 1996)). "A finding of probable cause does not require certainty or a preponderance of the evidence. Rather, the task of the issuing magistrate is 'simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Glowacki*, No. 22-3279, 2023 WL 179887, at *3 (6th Cir. Jan. 13, 2023), *cert. denied*, 143 S. Ct. 1042 (2023) (quoting *Illinois v. Gates*, 462 U.S. 213, 235, 238 (1983)). The assessment of probable cause calls for "using a realistic, holistic approach." *United States v. Stokes*, 742 F. App'x 947, 952 (6th Cir. 2018). Furthermore, "[i]f an inference is obvious from the factual context, a reviewing court should indulge it." *United States v. White*, 874 F.3d 490, 502 (6th Cir. 2017) (citing *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000) (*en banc*)).

First, the defendant says that the Court incorrectly recounted "that the officer conducting surveillance [on December 29, 2020] saw a person knock and enter 'the left entry door, but after several seconds he reemerged and knocked at the right entry, which was opened by a black male in his '20s' dressed in all black.'"  Def.'s Mot., ECF No. 79, PageID.628 (quoting Op. & Order, ECF No. 77, PageID.618).  The defendant says that construction of the affidavit language was erroneous because there is no indication that the visitor "knocked" on the right front door of the premises after exiting from the left front door.  The pertinent portion of the warrant affidavit reads in full as follows:

> A black, male, 20s, wearing an orange, red and black hoodie and black pants exited the driver seat. This individual then knocked on both front doors of the residence. He was let in the left front door (when facing), he exited the residence after a few seconds, and spoke with a black, male, 20s, wearing all black, who came from the right front door (when facing).

Warrant Affidavit, ECF No. 64-1, PageID.494.  The defendant correctly states that the affiant did not aver which door the visitor knocked on first or that he knocked on the right front door after having entered and exited the left front door.  However, any misconstruction of the sequence is immaterial to the significance of the encounter in the probable cause analysis.  The affidavit stated that the visitor "knocked on both front doors," and, after entering the left front door for "a few seconds," he then reemerged and spoke to someone "who came from the right front door."  It is a reasonable inference from the facts stated, given the short lapse of time, that the person who emerged from the right front door was answering the initial knock.  In any event, the significance of the incident is that a visitor was seen at the premises interacting with someone who emerged from the right front door, suggesting that the visitor's purpose was to engage with a person or persons residing therein.

Second, the defendant says that the Court misread the facts when it stated that, after the interaction at the front door, the visitor and the apparent resident "'went toward a white Chevy

Impala[,]' got into separate cars, and "'drove away "together.""'"  Def.'s Mot. at PageID.629

(quoting Op. & Order at PageID.618).  The defendant says that account was erroneous because

"the affidavit does not indicate that the men went toward a white Chevy Impala," but instead

"stated that each man got into their own car and left at the same time."  The pertinent portion of

the affidavit reads as follows:

> The individual from the burgundy SUV was now carrying what appeared to be a
> plastic bag, he went to his SUV, and the black male in all black, went to a white
> Chevrolet Impala that was in the driveway of the residence. Both vehicles left
> together and left the area.

Warrant Affidavit, ECF No. 64-1, PageID.494.  There is no discrepancy between the Court's

opinion and the statement in the affidavit, let alone a material discrepancy.  The affidavit does not

merely indicate that the vehicles "left at the same time"; it plainly states that "[b]oth vehicles left

*together*."  Regardless of whether the visitor and presumed resident approached the same vehicle

before embarking and leaving, the significant circumstance disclosed by the passage is that, after

a brief interaction at the entrance to the premises, both the visitor and the presumed resident got

into vehicles and "left together."  The finding of probable cause is not undercut by any perceived

discrepancy in the details of how the two men approached their vehicles or left the premises.

Third, the defendant says that the Court misapprehended the facts when it found that the

affidavit "'suggest[s] that the visitor went to the premises to pick up a delivery and left with a

plastic bag of something, and that the transaction occurred at the right door of the duplex.'"  Def.'s

Mot. at PageID.629 (quoting Op. & Order at PageID.623).  The defendant says that conclusion

was unfounded because the affidavit does not indicate that the affiant saw the visitor *enter* the right

front door of the Hurlbut property, but instead indicates that the visitor only entered at the left front

door.  The defendant further argues that, because the affidavit is unspecific about when the visitor

acquired the "plastic bag" seen in his hand, "the best reading of the affidavit is that the man

acquired the plastic bag while inside the left front door." Def.'s Mot. at PageID.630. The pertinent portion of the affidavit, cited above, states that, after the visitor and resident interacted at the right front door, the visitor was seen "now carrying what appeared to be a plastic bag." Warrant Affidavit, ECF No. 64-1, PageID.494. The defendant correctly notes that the affidavit is unspecific as to the exact moment when the visitor acquired the plastic bag in his hand. However, the report, fairly read, including the qualifying phrase "now carrying," indicates that the bag first was spotted by the affiant after the interaction that occurred at the right front door.

The Court's assessment of the affidavit relied on a common sense, contextual reading of the entire passage in question, which in context suggests that the visitor first was observed holding a plastic bag immediately after having interacted with a resident of the premises at the right front door. Closely read, the affidavit does not indicate that the visitor interacted with anyone when he was "let in the left front door." However, it does indicate that the visitor "spoke with" a person who emerged from the right front door, and subsequently — although in separate vehicles — "left together" with that same person. The finding of probable cause is not undercut by the speculative possibility that the plastic bag might have been obtained at some other time, and it is a fair inference from the facts as recited in the affidavit that it was obtained by the visitor during the interaction proximate to when the bag first was seen.

Finally, the defendant says that the Court misapprehended the facts when it stated that the affiant saw a white Durango SUV registered to the defendant parked at the 5894 Hurlbut premises on December 29, 2020. The defendant is correct; the affidavit does not mention that the white Durango was seen at the premises on December 29. However, it does indicate that the white Durango was seen (1) parked in the driveway at 5894 Hurlbut on December 14, 2020, (2) pulling up and parking at 6551 Bewick sometime later on the same day, (3) again, on the same date,

- 5 -

leaving 6551 Bewick and driving to a muffler shop located near Gratiot and Cedargrove streets, (4) parked on the street in front of 5894 Hurlbut on December 17, 2020, and (5) arriving at 6551 Bewick sometime on December 28, 2020.  Warrant Affidavit, ECF No. 64-1, PageID.492-93. During the stop off at the muffler shop, a passenger of the Durango was observed engaging in what appeared to be a hand-off with a person driving another vehicle.  *Id.* at 493.  On both occasions when the Durango visited the Bewick address, it was observed that an occupant of the Durango exited the vehicle, entered the Bewick premises for a short time (between 1-5 minutes), and then departed.  After those visits were observed, "short-stay" visits by other persons occurred which the affiant said were typical of drug transactions.  *Id.* at 492-93.

Read holistically, and keeping in view, as always, "the totality of the circumstances," *United States v. Brown*, 828 F.3d 375, 378 (6th Cir. 2016), the several sightings of the Durango at both involved premises still support the Court's conclusion that through those observations the affiant adequately had corroborated the information given to him by an anonymous tipster, who had informed police that the defendant (a.k.a. "Tango") was storing drugs at 5894 Hurlbut (which he entered through the *right* front door) and using the white Durango registered in his name to convey the drugs from there to 6551 Bewick.  As the Sixth Circuit has explained, "[t]he corroboration necessary is that which would, in combination with the informant's statement, create a fair probability that contraband or evidence of a crime will be found at the searched location." *United States v. Hargis*, No. 22-5651, 2023 WL 2238658, at *4 (6th Cir. Feb. 27, 2023) (quotations omitted).  The observations of a vehicle registered to the defendant parked at the subject premises, spotted at both suspected trafficking locations where apparent deliveries were being made, and being involved in an apparent hand-off transaction elsewhere, are sufficient along with other facts in the affidavit, such as the recovery of contraband during a search of the Bewick premises, to

establish a fair probability that the tipster's account was reliable. The fact that the white Durango was not spotted at 5894 Hurlbut on December 29, 2020 does not denude the basis of probable cause from the affidavit in light of other sightings of the vehicle on other dates within the relevant time frame.

The defendant has identified a few mischaracterizations of the facts stated in the affidavit, but none are substantial enough to compel a different outcome when all of the facts, correctly accounted for, are considered in the context of the entire narrative. The probable cause analysis is not a mechanical, multi-pronged test; it is a practical, commonsense determination. *Illinois v. Gates,* 462 U.S. 213, 230-40 (1983).

Because the defendant has failed to show that a different outcome would result from correction of the several discrepancies in the accounting of the facts, the motion for reconsideration will be denied.

Accordingly, it is **ORDERED** that the defendant's motion for reconsideration (ECF No. 79) is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:  August 21, 2023